United States District Court
Southern District of Texas
**ENTERED**
May 16, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| JOSEPH JOHNSON | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| WILMINGTON TRUST, N.A. | § | CIVIL ACTION NO. H-18-489 |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge, upon referral from the District Judge, is Wilmington Trust, N.A.'s ("Defendant") Motion for Summary Judgment (Document No. 21). Plaintiff has responded to the motion (Document No. 22), and Defendant has replied to Plaintiff's Response. (Document No. 23). Having considered the Motion, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED.

I. Background and Allegations in Second Amended Complaint

On January 26, 2018, Plaintiff, Joseph Johnson ("Johnson"), filed his Original Complaint in the 55th Judicial District Court of Harris County, Texas, Cause No. 2018-05439 ("the "State Court Action"). (Document No. 1-1, Exhibit A). Plaintiff's State Court Action relates to a foreclosure sale scheduled for February 6, 2018, of property located at 11606 Lakewood Crossing, Tomball, Texas 77377 ("Property."). (Document No. 1-1, Exhibit 3, p. 32). On February 16, 2018, the state court judge entered a Temporary Restraining Order, which prohibited the scheduled Trustee's sale of the Property from going forward. (Document No. 1-3, p. 1-2). On February 16, 2018, Defendant timely

removed the case to this Court on the basis of diversity jurisdiction.  (Document No. 1).  On February 23, 2018, Defendant filed a Motion to Dismiss.  (Document No. 4).  In response, Plaintiff filed his First Amended Complaint and Affidavit in Support.  (Document Nos. 7, 8).  Again, Defendant moved to dismiss Plaintiff's First Amended Complaint.  (Document No. 9).  Plaintiff responded to the motion to dismiss and simultaneously filed a Second Amended Complaint. (Document Nos. 10, 11).  Defendant timely replied to Plaintiff's Response and moved to strike Plaintiff's Second Amended Complaint.  (Document No. 15). The Court denied without prejudice Defendant's Motion to Dismiss and Defendant's Motion to Strike the Second Amended Complaint. (Document No. 10).  Defendant filed its Answer to Plaintiff's Second Amended Complaint on October 5, 2018.  (Document No. 18).  Thereafter, a Scheduling Order was entered setting a discovery deadline of January 30, 2019. Defendant has moved for summary judgment on Plaintiff's Second Amended Complaint.

In his Second Amended Complaint, Plaintiff alleges that, on or about September 2, 2005, Plaintiff and his wife, Margaret Johnson, executed an Adjustable Rate Note ("Note"), in the amount of $224,950, as well as a Deed of Trust ("Deed"), which lists First Franklin as the Lender.  Plaintiff further alleges that the Note and Deed were transferred to Defendant and that Nationstar Mortgage LLC ("Nationstar") is the loan servicer.  Second Amended Complaint (Document No. 10, ¶ 5-6). Plaintiff states that he experienced financial difficulties in 2014 due to health-related issues, and "realizing that he may soon" default on his mortgage payments, he contacted Nationstar to discuss "loss mitigation options." Second Amended Complaint (Document No. 10, ¶ 7).  Plaintiff alleges that he was offered a loan modification in November 2017.  With respect to the loan-modification-review process, Plaintiff alleges, in pertinent part:

2

8.  Johnson was offered a loan modification by Nationstar in November 2017. A Nationstar representative assured Johnson that if he gathered and submitted all of the required documents along with a loan modification application within 30-60 days, Wilmington would not foreclose on his property until his application had been accepted or denied and he had been provided the opportunity to appeal that decision if needed.  Johnson immediately completed and submitted the loan modification application along with the requested documentation on November 27, 2017–this was Johnson's first complete loan modification. Johnson called Nationstar on December 28, 2017 to obtain a status update on his loan modification application and to ensure his home was safe. The Nationstar representative Johnson spoke with confirmed that his loan modification was received, complete, and under review.  Additionally, the Nationstar representative reaffirmed what the previous Nationstar representative had told Johnson—that Nationstar would provide a full and fair loan modification review (including an appeal if needed) prior to Wilmington taking any action to foreclose on his Property. Further, the Nationstar representative stated that she was memorializing the conversation in her notes and that the agreement to deter any foreclosure proceedings pending loan modification review would be signed by her supervisor and mailed to Johnson–Johnson continues to await that agreement.

9.  Accordingly, Johnson believed all was well and that approval of his loan modification application was imminent until he received a Notice of Acceleration and Notice of Trustee's Sale on January 4, 2018 informing him that his Property was posted for foreclosure sale on February 6, 2018. . . Johnson was shocked because the Nationstar representative he spoke with 6 days earlier assured him that Nationstar would not foreclose on his Property while in loan modification status.  Apparently, Nationstar initiated foreclosure proceedings despite their assurances to Johnson, without formally accepting or denying the loan modification application, and without sending the appropriate notice of default, opportunity to cure the default, and notice of intent to accelerate the debt as required by the Texas Property Code thereby violating Johnson's due process rights as well the Deed of Trust.

Second Amended Complaint (Document No. 10, ¶ 8-9).   Plaintiff alleges claims of violation of

Texas Property Code § 5.065, breach of contract, fraud, promissory estoppel, violation of the Real

Estate Settlement Procedures Act ("RESPA"), violation of Texas Property Code § 51.002, violations

of the Texas Debt Collection Act, and breach of duty of cooperation.   Second Amended Complaint

(Document No. 10, at 4-12).  Plaintiff seeks actual, nominal, and exemplary damages as well as

attorneys' fees.  Second Amended Complaint (Document No. 10, at 12).  Defendant has filed a

3

motion for summary judgment, arguing that Plaintiff is not entitled to relief on any of his claims as a matter of law. (Document No. 21).

## II. Undisputed Facts

The Plaintiff purchased the Property on January 23, 2003, from Perry Homes. Plaintiff obtained financing for the purchase of the Property for $195,284.00 from New Century Mortgage Corporation. (Document No. 21-2, Exhibit 1 Warranty Deed with Vendor's Lien recorded February 4, 2003 "Purchase Money Loan"). Thereafter, in September 2005, Plaintiff obtained a renewal and extension of the Purchase Money Loan from First Franklin, a Division of Nat. City Bank of IN in the amount of $224,950.00. (Document No. 21-3, Exhibit 2, Adjustable Rate Note dated September 2, 2005 "Renewal and Extension Loan" and Document No. 21-4, Exhibit 3, Deed of Trust recorded September 13, 2005 "Deed of Trust"). The Plaintiff failed to make his September 1, 2012, mortgage payment and has made no further payments. (Document No. 21-1, Exhibit A-Affidavit of April Hawkins, ¶ 6). On April 4, 2016, Nationstar sent, by certified mail, postage prepaid, a notice of Plaintiff's default, along with an intent to accelerate the amounts due under the Note to Plaintiff at 11606 Lakewood Crossing Drive, Tomball, Texas 77377. (Document No. 21-5, Exhibit 4 "Notice of Default"). On December 28, 2017, Plaintiff was sent by certified mail a Notice of Acceleration and Posting and of the Trustee's Sale scheduled for February 6, 2018. (Document No. 21-6, Affidavit of Service of Notice of Acceleration and Posting, Exhibit B, and Document No. 21-7, Exhibit 5).

## III. Standard of Review

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

4

matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that there exists no genuine issue of material fact. *Brandon v. Sage Corp.*, 808 F.3d 266, 269—70 (5th Cir. 2015) (citing *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986)). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1]  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, the non-movant "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Brandon*, 808 F.3d at 270 (quoting *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006)).

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are to be viewed in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). "If the record, viewed in the light most favorable to non-movant, could not lead a rational trier of fact to decide in non-movant's favor, summary judgment is appropriate." *Allen v. Radio One of Texas II, LLC*, 515 Fed. Appx 295, 299 (5th Cir. 2013) (citing *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993). On

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the nonmoving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S,* 520 F.3d at 412.

the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Kelley*, 992 F.2d at 1413. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2513 (1986).

The Magistrate Judge has considered the documents attached to Defendants' Motion (Document No. 21, Exhibits 21-1-21-7) and the exhibits attached to Plaintiff's Response to the Motion for Summary Judgment (Document No. 22-1 to 22-4).

IV.  Discussion

A.  Plaintiff's Claim for Violation of Texas Property Code § 5.065

Plaintiff alleges  that Defendant violated Texas Property Code § 5.065 by failing to provide "proper and timely notice of default, the opportunity to cure the default, and notice of intent to accelerate the debt which are required in order for Wilmington to foreclose on the Property." Second Amended Complaint (Document No. 10, ¶ 14).  Defendant argues that undisputed summary judgment evidence shows that the provisions of subchapter D of § 5.065, including the notice and time to cure requirements, do not apply because Plaintiff purchased the Property in 2003 from Perry Homes in a traditional real estate transaction, *i.e,* he obtained a deed to the property subject to a lien securing repayment of the purchase money. *See* Document Nos. 21-2, 21-3, 21-4. The Magistrate Judge agrees.

Section 5.065 is a part of chapter 5, subchapter D of the Texas property code, which governs "executory contracts for conveyance." See TEX. PROP. CODE ANN. § 5.061-85 (West 2014 & Supp. 2017); *see also Graces v. Hernandez*, No. 13-13-00242-CV, 2016 WL 2970686, at *4 (Tex. App.-Corpus Christi May 19, 2016, no pet.)(mem.op).  "Subchapter D was enacted to protect

purchasers who execute a "contract for deed." *Weaks v. White*, 479 S.W.3d 432, 439 (Tex. App.-
Tyler 2015, pet. denied)(citing *Flores v. Millennium Interests, LTD.*, 185 S.W.3d 427, 435 (Tex.
2005)). "A contract for deed, unlike a typical secured transaction involving a deed of trust, is a
financing arrangement that allows the seller to maintain title to the property until the buyer has paid
for the property in full." *Morton v. Nguyen,* 412 S.W. 3d 506, 509-510 (Tex. 2013). Because
Defendant did not retain title to the property until after Plaintiff made all required payments on the
underlying loan, there was no executory contract for the sale of the property and the provisions of
subchapter D of the property code, including the notice and time to cure requirements in section
5.065, did not apply to the transaction. Accordingly, Plaintiff's cause of action for a violation of
Texas Property Code § 5.065 fails as a matter of law.

B.  Plaintiff's Claim for Breach of Contract

Plaintiff contends that Defendant breached their purported agreement to consider the loan
modification.  Plaintiff alleges, in pertinent part:

> 16.  The actions committed by Wilmington constitute breach of contract because:A.
> There exists a valid, enforceable contract between Johnson and Wilmington; B.
> Johnson has standing to sue for breach of contract; C.  Johnson performed, tendered
> performance, or was excused from performing his contractual obligations; D.
> Wilmington breached the contract; and E.  The breach of contract by Wilmington
> caused Johnson's injury.

Second Amended Complaint (Document No. 10, at 5). According to Plaintiff, his breach-of-contract
claim is not based on the mortgage-loan agreement but on a totally separate agreement, whereby
Plaintiff agreed to put forth time and effort to prepare and submit a loan- modification application
and supporting documents, in exchange for Defendant completing the loan-modification review
process, and informing Plaintiff of the outcome.  He contends that postponement of a possible future

foreclosure sale pending the outcome of the loan-modification review process was a by-product of this new agreement. Defendant moves for summary judgment on the grounds that this claim is bare-bones and conclusory and fails to state a claim, and that the purported agreement to provide a full and fair loan-modification review is barred by the statute of frauds. The Magistrate Judge agrees.

Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Eagle Grp, LLC*, 490 F.3d 380, 387 (5th Cir. 2007)(quoting *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App–Houston [1st Dist.] 2001, no pet.)).

Upon this record, Plaintiff has not identified a provision of the deed of trust that imposes a requirement on Defendant to postpone foreclosure during a modification-loan review process or that creates a separate, stand-alone agreement for this process. Plaintiff has not cited to, nor has the Court found, any requirement that Defendant provide Plaintiff a stay of foreclosure during a "full and fair review process." In addition, Plaintiff's breach-of-contract claim based on Defendant's purported promise to consider a loan modification fails as a matter of law due to a lack of consideration. *See James v. Wells Fargo Bank, N.A.*, 533 Fed. Appx. 444, 447 (5th Cir. 2013)("[T]he plaintiffs' breach of contract claim fails as a matter of law because the parties' oral agreement to enter into loan modification proceedings never ripened into an enforceable contract due to plaintiffs' lack of consideration. . . .").

Under Texas law, a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. COM. CODE

8

§ 26.02(b).   The term "loan agreement" includes any agreement or promise where a financial institution "loans or delays repayment of or agrees to loan or delay repayment of money, goods, or other things of value or to otherwise extend credit or make a financial accommodation." *Id.* § 26.02(a)(2). Thus "[a] loan agreement for more than $50,000 is not enforceable unless it is in writing." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5ᵗʰ Cir. 2013)(citing Tex. Bus. & Com. Code § 26.02(b)).   A promise to postpone foreclosure during a potential loan-modification review process as alleged by Plaintiff, is likewise subject to the statute of frauds. See *Milton v. U.S. Bank Nat'l Ass'n*, 508 Fed. Appx. 326, 328-29 (5ᵗʰ Cir. 2013 );  *Stolts v. Wells Fargo Bank, NA,* 31 F.Supp.3d 876, 881 n.3 (S.D.Tex. 2014)("Even if Plaintiff had pleaded an implied promise by Well Fargo not to foreclose while considering the loan modification, . . . such a promise would be subject to the Statute of Frauds since it would modify the underlying mortgage agreement's foreclosure terms.   Modifications to mortgages exceeding $50,000 are subject to the statute of frauds . . .").

Here, the alleged oral agreement that Defendant would forego foreclosure during the loan-modification review process is unenforceable under the statute of frauds because such an agreement would have altered the terms of the parties' written loan agreement that exceeded $50,000 in value. Plaintiff has not alleged anything about a *written* loan-modification agreement incorporating the new terms that satisfy the statute of frauds. *See Scott v. Bank of Am., N.A.*, 597 Fed. Appx. 223, 225 (5ᵗʰ Cir. 2014)("To satisfy the statute of frauds in Texas, a writing . . . 'must be complete within itself in every material detail and contain all of the essential elements of the agreement.'")(quoting *Sterrett v. Jacobs*, 118 S.W.3d 877, 879-80 (Tex. App.–Texarkana 2003, pet. denied)).   Further, Plaintiff does not allege that such a document had been prepared that Defendant promised to sign that would

9

satisfy the requirements of the statute of frauds.  At best, Plaintiff alleges that Nationstar's

representative memorialized their conversation; that the purported representative's supervisor would

sign off on the notes of the conversation; and that the notes would be mailed to him. This falls short

of the requirement of a written agreement that complies with the Texas statute of frauds.  As such,

the statute of frauds bars Plaintiff from enforcing an alleged oral agreement to delay foreclosure, and

his claim fails as a matter of law.

C. Plaintiff's Fraud Claim

Plaintiff contends that Defendant's conduct concerning representations about the loan-

modification review process constitute fraud.  Plaintiff's Second Amended Complaint alleges, in

pertinent part:

> 18. ...Nationstar made false and material representations to Johnson when informing
> Johnson that Wilmington would provide a full and fair loan modification review of
> Johnson's loan modification application prior to Wilmington taking any action to
> foreclose on his Property.  Johnson's account was still being reviewed for a loan
> modification yet Wilmington posted his Property for foreclosure sale on February 6,
> 2018.  Nationstar knew that these representations were false or made these
> representations recklessly, as a positive assertion, and without knowledge of its truth.
> In addition, Nationstar made these representations with the intent that Johnson act on
> them and Johnson relied on these representations which caused Johnson's injury.

Defendant argues that Plaintiff's fraud claim fails as a matter of law because Plaintiff's allegations

fail to meet the heightened pleading requirements of Rule 9(b) and is barred by the economic-loss

rule and the statute of frauds  The Magistrate Judge agrees.

Under Texas law, the elements of fraud are "(1) the defendant 'made a material

misrepresentation that was false'; (2) the defendant 'knew the representation was false or made it

recklessly as a positive assertion without any knowledge of its truth;' (3) the defendant intended to

induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied

upon the representation and suffered injury as a result." *JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.,* 546 S.W.3d 648, 653 (Tex. 2018)(quoting *Ernst & Young, L.L.P. v. Pac. Mut Life Ins.Co.* 51 S.W.3d 573, 577 (Tex. 2001)); *Massey v. EMC Mortg. Corp.* 546 Fed. Appx. 477, 481 (5th Cir. 2013). Rule 9(b) requires the complaint to "state with particularity the circumstances constituting the fraud." Fed.R.Civ.P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)(quoting *Williams v. WMX Tech. Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading.").

Here, Plaintiff has not identified evidence, other than his own affidavit, supporting the fraud allegations set forth in his Second Amended Complaint. Plaintiff's Affidavit states:

> 9. I began to have financial difficulties in 2014 due to severe health issues. Realizing that I may soon become in default on my mortgage payments, I began contacting Nationstar to discuss loss mitigation options.

> 10. I was offered a loan modification by Nationstar in November 2017. I immediately completed a submitted the loan modification application along with the requested documentation on November 27, 2017–this was my first loan modification. I called Nationstar on December 28, 2017 to obtain a status update on my loan modification application and to ensure my home was safe. The Nationstar representative I spoke with confirmed that my loan modification was received, complete, and under review. Additionally, the Nationstar representative assured me that Wilmington would take no action to foreclose on my Property while in loan modification status. Further, the Nationstar representative stated that she was memorializing the conversation by contemporaneously drafting an agreement to that effect which would be signed by her supervisor and mailed to me so I would be assured that all was well–I continue to await that agreement.

11

11.  Accordingly, I believed all was well and that approval of my loan modification application was imminent until I received a Notice of Acceleration and Notice of Trustee's Sale on January 4, 2018 informing me that my Property was posted for foreclosure sale on February 6, 2018.   I was shocked because the Nationstar representative I spoke with 6 days earlier assured me Nationstar would not foreclose on my Property while in loan modification status.   Apparently, Nationstar initiated foreclosure proceedings despite their assurances to me, without formally accepting or denying the loan modification application, and without sending notice of default, opportunity to cure the default, and notice of intent to accelerate the debt as required by the Texas Property Code thereby violating my due process rights as well as the Deed of Trust.   (Document No. 8).

"[A]n affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *C.R. Pitman Constr. Co. Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F.App'x 439, 443 (5th Cir. 2011)."A self-serving affidavit alone, though, will not defeat a motion for summary judgment." *Spencer v. FEI, Inc.*, 725 F.App'x 263, 268 (5th Cir. 2018).   Other than identifying the month and year when the alleged conversations occurred, Plaintiff's Affidavit and Second Amended Complaint are short on facts and fail to satisfy the particularity requirements of Fed. R.Civ.P. 9(b).   For example, Plaintiff does not identify the alleged Nationstar representative who made the purported representations. In his Response to Defendant's Motion for Summary Judgment, Plaintiff responds that he has satisfied Rule 9(b) by alleging that one misrepresentation occurred in November 2017 when a Nationstar representative made assurances about the loan-modification application, and that the second misrepresentation occurred on December 28, 2017, when Plaintiff again spoke to a Nationstar representative. Plaintiff further states that he was "serving discovery requests on Defendant contemporaneously with the filing of this response which will help to fill in any missing details to support Plaintiff's fraud cause of action." (Document No. 22, p. 7).   Plaintiff proffered this same argument, however, in his April 13, 2018, Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (Document

12

No. 11, p. 7-8). Discovery ended on January 30, 2019, and to date, Plaintiff has not come forward

with any evidence to fill in any missing details to support his fraud claim. Plaintiff has provided

scant details, much less specific details to satisfy the who, when, where, and how information

required by Fed.R.Civ.P. 9(b).   In addition, Plaintiff's fraud claim is barred by the economic-loss

rule and statute of frauds. Under Texas law, the economic-loss rule precludes recovery under tort law

when the Plaintiff's purported economic loss is based on contract law alone.  "The statute of frauds

is a defense to common law fraud claims '[w]hen a plaintiff, in his claim asserting fraud, attempts

to rely upon an allegedly fraudulent oral promise to enforce.'"  *Cooper v. U.S. Bank, Nat'l Ass'n,*

Civ. No. 12-3190, 2014 WL 12531345, at *4 (S.D.Tex. Jan. 24, 2014)(quoting *Leach v. Conoco,*

*Inc.,* 892 S.W.2d 954, 960 (Tex. App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.)).   Here,

Defendant's alleged fraudulent representations relate to the modification discussions/review process.

These types of representations do not give rise to liability independent of Plaintiff's contractual

relationship with Defendant, which arose under the Note and Deed of Trust. Because Plaintiff has

not alleged an independent injury, his fraud claims fails because it is barred by the statute of frauds

and the economic loss rule. *See* Tex. Bus. & Com. Code § 26.02; *Casey v. Fed. Home Loan Mortg.*

*Ass'n,* No. H-11-3830, 2012 WL 1425138, *7 (S.D.Tex. 2012)("An oral agreement to postpone

foreclosure on their home is an oral agreement to modify that agreement-delay repayments of the

loan-and such an agreement is not valid, under Texas law, if it is not in writing."); *SW Bell Tel. Co.*

*Delanney,* 809 SW2d 493, 495 (Tex. 1991)("When the injury is only the economic loss to the subject

of a contract itself the action sounds in contract alone."); *Mem'l Hermann Healthcare Sys. Inc. v.*

*Eurocopter Deutschland, GMGH*, 524 F.3d 676, 678 (5th Cir. 2008)("Under Texas's economic loss

rule, . . . no duty in tort exists when plaintiffs have suffered only economic loss.").   Because

13

Plaintiff's fraud claim does not meet the heightened pleading requirements of Rule 9(b), and is barred by the economic-loss rule and the statute of frauds, Plaintiff's fraud claim fails as a matter of law.

D. Plaintiff's Claim for Promissory Estoppel

Plaintiff's fourth cause of action is for promissory estoppel. Plaintiff alleges that the Defendant's actions support promissory estoppel because: Wilmington made a promise to Johnson; Johnson reasonably and substantially relied on the promise to his detriment; Johnson's reliance was foreseeable by Wilmington; and injustice can be avoided only by enforcing Wilmington's promise. Second Amended Complaint (Document No. 10, at 6). Plaintiff's claim purports to be based on the alleged assurances to him that Defendant would not foreclose on the Property while his loan-modification application was under review. Defendant contends that Plaintiff's promissory estoppel claim should be denied because Plaintiff fails to allege facts sufficient to support the elements of a promissory-estoppel claim and that the claim is also barred by the statute of frauds. The Magistrate Judge agrees.

"To state a claim for promissory estoppel a plaintiff must plead (a) a promise, (b) foreseeability of reliance by the promissory, (c) substantial and reasonable reliance by the promise to its detriment, and (d) enforcement of the promise is necessary to avoid injustice." *Motten v. Chase Home Finance,* 831 F.Supp.2d 988, 1002 (S.D. Tex. 2011). "Promissory estoppel claims premised on promises to negotiate fail as a matter of law because they are not sufficiently definite, and therefore a promise that Plaintiff's loan modification was 'under consideration' would not trigger the promissory estoppel doctrine. Under Texas law, the alleged promise sustaining a promissory estoppel claim must not be 'too vague and indefinite.' Promises to negotiate fail to meet this

14

requirement." *Stolts v. Wells Fargo Bank, NA,* 31 F.Supp. 3d 876, 881 n.4 (S.D.Tex. Jan. 16,

2014)(citing *Addicts Servs., Inc. v. GGP-Bridge land, LP.*, 596 F.3d 286, 300 (5th Cir. 2010)).

Furthermore, a claim of promissory estoppel generally cannot be used to circumvent the statute of

frauds.  It is only when the promise at issue is "a promise to sign an already existing written

agreement that would satisfy the statute of frauds," that promissory estoppel can survive the statute

of frauds under Texas law. *Martins,* 722 F.3d at 256-57 (5th Cir. 2013); *1001 McKinney Ltd. Credit*

*Suisse First Boston Mortgage Capital,* 192 S.W.3d 20, 29 (Tex. App.–Houston [14th Dist.] 2005,

pet. denied)("A mere promise to prepare a written contract is not sufficient."); *Stolts*, 31 F.Supp.3d

at 881 n.4 (dismissing promissory-estoppel claim because a promise that a loan modification was

"under consideration" is too indefinite and vague).  Upon this record, Plaintiff's promissory estoppel

claim fails as a matter of law.

E. RESPA

Defendant moves for summary judgment on Plaintiff's fifth cause of action under the Real

Estate Settlement Procedure Act ("RESPA") claim because Plaintiff alleges that Defendant's alleged

violations of RESPA come by and through its agent, Nationstar.  Plaintiff alleges in pertinent part:

> 24.  As such, the actions committed by Wilmington (by and through its agent
> Nationstar) are a violation of RESPA because: A. Johnson was working with
> Wilmington pursing loss mitigation options; B. Johnson submitted a complete loss
> mitigation application prior to Wilmington's first notice of filing; C.. Alternatively,
> Johnson submitted a complete loss mitigation application more than 37 days prior to
> the foreclosure sale; D. Wilmington failed to provide formal notice of acceptance or
> denial of the loan modification application and the required 30-day appeal period (if
> needed) prior to the foreclosure sale; E. Wilmington completed the violation by
> posting Johnson's Property for foreclosure sale on February 6, 2018.

Second Amended Complaint (Document No. 10 at 7).  Plaintiff's RESPA claim is foreclosed by the

Fifth Circuit's decision in *Christina Trust v. Riddle*, 911 F.3d 799 (5th Cir. 2018).  In *Riddle,* the

15

homeowner alleged that the bank was vicariously liable for the failure of its loan servicer to comply

with RESPA. The Fifth Circuit rejected this argument based on the plain terms of the regulation,

which imposes duties on services, and held that "[t]he text of this statute plainly and unambiguously

shields Bank of America from any liability created by the alleged RESPA violations of its loan

servicer." *Id.* at 806. Applying the Fifth Circuit's decision to Plaintiff's allegations that Defendant

is vicariously liable for the actions of its servicer, Nationstar, Plaintiff's RESPA claim fails as a

matter of law.

F.   Violation of § 51.002 of the Texas Property Code

Through his sixth cause of action, Plaintiff alleges that Defendant violated § 51.002 of the

Texas Property Code. Specifically, Plaintiff alleges that "Wilmington never sent properly and timely

notice of default or provided the 20 day opportunity to cure the default prior to sending Plaintiff

Notice of Trustee's Sale." Second Amended Complaint (Document No. 10, at 8). Defendant points

to the summary-judgment evidence showing that proper notice was sent to Plaintiff via certified

mail. Defendant further argues that Section 51.002 of the Texas Property Code does not provide a

private cause of action, and to the extent that Plaintiff's allegations could be construed as a wrongful

foreclosure claim, the claim likewise fails as a matter of law because no foreclosure sale occurred.

The Magistrate Judge agrees.

Plaintiff's allegation that he never received the notices does not establish a claim under the

Texas Property Code. "The mere allegation by plaintiffs that they did not receive notice does not

show that [Defendant] failed to comply with the statutory requirements." *Gillespie v. Bac Home

Loan Servicing, LP,* No. 4:11-cv-388-A, 2012 WL 1870923, at *5 (N.D.Tex. May 23, 2012). "There

is no requirement that [Plaintiffs] receive the notice." *Martins,*   722 F.3d at 256.   The Texas

16

Property Code provides, in pertinent part, that "[s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address...." Tex. Prop. Code § 51.002(e). Here, the uncontroverted summary judgment evidence shows that Defendant satisfied its obligations under the Texas Property Code. *See* (Document No. 21-5, 21-6, 21-7).

Furthermore, § 51.002 does not create an independent cause of action. *See Vallier v. Nationstar Mortgage, LLC,* NO. H-17-0998, 2018 WL 1319166, at * 3 (S.D.Tex. Feb. 1, 2018), *adopted,* 2018 WL 1322247 (Mar. 13, 2018)(collecting cases); *Pearlman v. Wells Fargo Bank, N.A.,* Civ. No. H-17-1380, 2018 WL 2335367, *2 (S.D.Tex. Mar. 7, 2018)**;** *Rucker v. Bank of Am. N.A.,* 806 F.3d 830 n. 2 (5ᵗʰ Cir. 2015)("Although the Texas Supreme Court has not decided this issue, the federal district courts that have addressed it seem to conclude that Section 51.002(d) does not intend an independent private cause of action.").

Claims brought pursuant to § 51.002 are generally construed as wrongful foreclosure claims. To establish a claim for wrongful foreclosure, a plaintiff must show: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the two." *Miller,* 726 F.3d at 726(quoting *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.–Corpus Christi 2008, no pet.)). Under Texas law, there is no cause of action for an attempted wrongful foreclosure. *See Suarez v. U.S. Bank Trust National Assn.,* SA-18-CV-00849-OLG, 2019 WL 1048854, at *7 (W.D.Tex. Mar. 4, 2019); *Baker v. Countrywide Home Loans, Inc.* No. Civ. A 308-CV-0916-B, 2009 WL 1810336, at *4 (N.D.Tex. June 24 2009)("Because recovery is premised upon one's lack of possession of real property, individuals never losing possession of the property cannot recover on a theory of wrongful foreclosure."). Here, Plaintiff has not alleged or come

17

forward with evidence showing that there was a foreclosure. Indeed, the temporary restraining order prohibited the scheduled Trustee Sale from going forward. Because Plaintiff has not lost possession of the Property, Plaintiff's wrongful foreclosure claim fails as a matter of law. Thus Plaintiff's claim under § 51.002 should be dismissed because it fails as a matter of law.

G. Texas Debt Collection Act Claims

The Texas Debt Collection Act, TEX. FIN. CODE §§ 392.001 *et al*, provides a cause of action for wrongful debt collection. *See Cushman v. GC Servs., LP*, 657 F.Supp.2d 834, 840 (S.D.Tex. 2009), *aff'd* 397 Fed. Appx. 24 (5th Cir. 2010). To plead a viable TDCA claim, a plaintiff must set forth facts showing that : (1) the debt at issue is a consumer debt; (2) the defendant is a debt collector within the meaning of the TDCA; (3) the defendant committed a wrongful violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful acts. *See* TEX. FIN. CODE §§ 392.001-392.404.

Plaintiff alleges that Defendant violated §§ 392.301(a)(8) and 392.304(a)(14). Second Amended Complaint (Document No. 10, at 8-11). In particular, Plaintiff alleges that Defendant violated the Texas Property Code by not sending notice as required by the Texas Property Code, by violating RESPA, and by making fraudulent, deceptive and misleading statements about the loan-modification review process. Defendant contends that the summary-judgment evidence shows, as a matter of law, that notice was given in accordance with the Texas Property Code; that, as a matter of law, there is no RESPA violation, as discussed above; and that any discussions regarding a potential loan modification are not covered by the TDCA. The Magistrate Judge agrees.

Here, to the extent that Plaintiff claims that Defendant violated Section 392.301(a)(8) by attempting to foreclose before it gave the notices required by the Texas Property Code, Plaintiff's

18

claim fails because the undisputed summary judgment evidence shows no violation of the Texas Property Code. Further, evidence establishes that Plaintiff had defaulted on the Loan, and Section 392.301(a)(8) does not prohibit Defendant from exercising its rights under the Deed of Trust by pursuing foreclosure. Section 392.301(a)(8) prohibits a debt collector from using "threats, coercion, or attempts to coerce" that involve "threatening to take an action prohibited by law." TEX.FIN.CODE § 392.201(a)(8); *Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-cv-3519, 2012 WL 1059043, at *7(S.D.Tex. Mar. 28, 2012)(holding that the plaintiffs failed to state a § 392.301(a)(8) claim because "foreclosure on [their] home after [they] admittedly defaulted on their mortgage loan [was] not an action prohibited by law"). With respect to RESPA, as discussed above, Plaintiff's RESPA claim fails as a matter of law because it is based on vicarious liability. Further, "there is no language in the TDCA incorporating RESPA." *See Brannan v. U.S. Bank Nat'l Ass'n*, Civ. No. 3:17-CV215, 2018 WL 4922390, at *3 (S.D. Tex. Oct. 10, 2018).

Section 392.304(a)(8) prohibits "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(A)(8). "To violate the TDCA using a misrepresentation, a debt collector must have made an *affirmative* statement that was false or misleading." *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015)(quoting *Verdin v. Fed.Nat'l Mortg. Ass'n,* 540 F.App'x 253, 257 (5th Cir. 2013)(emphasis in original). Section 392.304(a)(8) lists categories that do not fall within this section. In one category are "statements about loan-modification applications and the postponement of foreclosure.'" *Rabe v. Wells Fargo Bank, N.A.* 616 F.App'x 729, 735 (5th Cir. 2015)(quoting *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015)); *Chavez v. Wells Fargo Bank, N.A.*, 578 F.App'x 345, 348 (5th Cir. 2014)("We

19

have previously held that statements regarding loan modifications do not concern the 'character, extent, or amount of a consumer debt' under section 392.304(a)(8)"); Moreover, "[a]n agreement to delay foreclosure is subject to the Texas Statute of Frauds, and, accordingly, must be in writing to be enforceable." *Milton*, 508 Fed. Appx. at 328-329; *Fields v. JP Morgan Chase Bank, N.A.,* 638 Fed. Appx. 310, 313 (5th Cir. 2016) ("[T]he statute of frauds acts to bar certain claims of misrepresentation under the TDCA."). Plaintiff's allegations relate to purported misrepresentations to Plaintiff about the status of his loan- modification application, which fall outside Section 392.304(a)(8). Here, the uncontroverted summary judgment evidence shows that, during the time his loan-modification application was purportedly under review, Plaintiff knew he owed a mortgage debt, what the amount of that debt was, and that he had defaulted. Upon this record, Plaintiff's TDCA claim fails as a matter of law.

H. Breach of Duty of Cooperation

Plaintiff alleges that Defendant breached a duty of cooperation. Plaintiff alleges, in pertinent part:

> 33. As described above, Wilmington misled Plaintiff with oral representations regarding the necessary steps he needed to take to fulfill his obligations under the loan agreement–representations that were untrue. These representations interfered with Plaintiff's ability to perform his obligations. Wilmington has therefore breached the implied duty of cooperation and Plaintiff has suffered damages as a result.

Second Amended Complaint (Document No. 10, at 12). Plaintiff argues that Defendant breached the duty to cooperate when it mishandled the loan-modification review process, and that this nearly resulted in the Property being sold. (Document No. 22, p. 12). In response, Defendant points to evidence establishing that there is only one written agreement: the Loan Agreement, and that

20

Plaintiff has long been in breach of that agreement by failing to make monthly mortgage payments since September 2012. "Texas law does not recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power." *Watson v. Citimortgage, Inc.*, 814 F.Supp. 2d 726, 713 (E.D. Tex. 2011)(internal citations and quotations omitted); *Ayres v. Parker*, No. SA-12-CV-621-XR, 2013 WL 4048328, at \*12 (W.D. Tex. July 29, 2013). As discussed above, Plaintiff has not come forward with *any* evidence showing a loan modification that would satisfy the Texas statute of frauds. Because no valid contract to modify the original loan agreement was ever formed, Plaintiff's purported breach-of-the-duty-to- cooperate claim fails as a matter of law. The only contract between the parties has been, and continues to be, the Note and Deed of Trust.

V. Conclusion and Recommendation

The undisputed documentary evidence shows that Plaintiff's claims fail as a matter of law. The Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 21) be GRANTED and that all claims be dismissed with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United*

21

*Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall

be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this _____day of _____, 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

*Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall

be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 16th day of _____, 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE